
FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

2019 JUN 20 PM 2: 16

CLERK US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA FLORIDA

UNITED STATES OF AMERICA

v.

CASE NO. 8:19 cr 266 T 35 AEP

NOVITA INDAH and
LARRY MALUGIN

18 U.S.C. § 371
18 U.S.C. § 545
18 U.S.C. § 554
16 U.S.C. §§ 3372(a)(1),
　3373(d)(1)(B)
16 U.S.C. §§ 3372(d)(1),
　3373(d)(3)(a)(i)
18 U.S.C. § 2

**INDICTMENT**          SEALED

The Grand Jury charges:

**COUNT ONE**
(Conspiracy)

**A. Introduction**

At all times material to this Indictment:

**The Defendants**

1.　Defendant NOVITA INDAH was a citizen of the Republic of Indonesia; she resided in Indonesia until moving to Puerto Rico on approximately April 24, 2013. On or about August 12, 2013, INDAH moved to Port Richey, Florida, her current city of residence.

2.　Defendant LARRY MALUGIN was a citizen of the United States of America; he lived in Indonesia from approximately 2009 until moving to Puerto Rico in 2011. On or about August 12, 2013, MALUGIN moved to Port Richey,

Florida, his current city of residence. Defendant MALUGIN was married to Defendant INDAH.

3. Defendants INDAH and MALUGIN operated an online business selling Southeast Asian wildlife, primarily from Indonesia, to customers in the United States and other countries.

## Background

4. The United States, Indonesia, and approximately 182 other countries were signatories to a multilateral treaty called the Convention on International Trade in Endangered Species of Wild Fauna and Flora, 27 U.S.T. 1087, T.I.A.S. 8249 (commonly referred to as "CITES"). CITES provided a mechanism for regulating international trade in species whose survival was considered threatened by trade.

5. The purpose of CITES was to monitor the trade of and to protect fauna and flora from commercial activities that might diminish the capability of any species to survive in the wild. CITES classified wildlife and plants in three appendices which gave specific trade protection to fauna and flora. International trade in species listed in these Appendices was monitored and regulated by permits and quotas. The permit restrictions applied to live and dead specimens, as well as the skins, parts, and products made in whole or in part from a listed species. Wildlife and plant species listed in Appendix I of CITES were those currently threatened with extinction and that were or may be further threatened by trade. Under Appendix I of CITES, a species could be exported from a country only if, prior to exportation, the exporter applied for and obtained a valid foreign import permit issued by the country of

import and a valid export permit issued by the country of origin. Wildlife and plant species listed in Appendix II of CITES included species that were not presently threatened with extinction but may become so if their trade was not regulated. Under Appendix II of CITES, a species could be exported from a country only if, prior to exportation, the exporter applied for and obtained a valid CITES export permit issued by the country of origin.

6. Species listed in Appendix I and II of CITES were prohibited from export to the United States by Title 50, Code of Federal Regulations, Section 23.13, which states:

> except as provided in § 23.92, it is unlawful for any person subject to the jurisdiction of the United States to conduct any of the following activities unless they meet the requirements of this part: Import, export, re-export, or engage in international trade with any specimen of a species listed in Appendix I, II, or III of CITES.

The exporter was required to provide all pertinent information as well as submit Federal Fish and Wildlife Application Form 3-200-32, 3-200-33, 3-200-36, and/or 3-200-74.

7. CITES was implemented in the United States by the Endangered Species Act of 1973 (the "ESA"), which directed the U.S. Fish and Wildlife Service ("USFWS") to administer the treaty. 16 U.S.C. §§ 1537a, 1540(f). The ESA made it unlawful to knowingly "trade in any specimen contrary to the provisions of [CITES], or to possess any specimen traded contrary to the provisions of [CITES]." 16 U.S.C. §§ 1538(c)(1), 1540(b)(1). "Trade," in this context, meant the same as international trade. 50 C.F.R. Part 23.5. The USFWS issued regulations incorporating the specific

3

permit requirements and provisions of CITES and listing the species contained on the CITES appendices. 50 C.F.R. Part 23.

8. The slow loris (*Nycticebus sp.*) was a nocturnal primate indigenous to Southeast Asia. All species of slow loris had been listed in CITES Appendix I since 2007.

9. The babirusa (*Babyrousa sp.*) was a pig native to Indonesia. Collectors prize male babirusa skulls for their distinctive curving tusks. All species of babirusa had been listed in CITES Appendix I since 1975.

10. The leopard cat (*Prionailurus sp.*) was a small feline found in China, India, and Southeast Asia. All species had been listed under CITES Appendix II since 1977, though some species were afforded CITES I protection.

11. All primates in the *Cercopithecidae* family were protected by CITES Appendix II since 1977. This included all species of macaques, lutungs, and langurs, social monkeys native to Southeast Asia and India.

12. All Asiatic cobras (*Naja sp.*) had been listed in CITES Appendix II since 1990. This included the Javan spitting cobra (*Naja sputatrix*), an Indonesian snake capable of spitting venom.

13. Monitor lizards (*Varanus sp.*) had a large variety of size and habitat across Asia, Africa, and Australia. All species had been listed in CITES Appendix II since 1975.

14. The reticulated python (*Python reticulatus*) was the world's longest snake and could be found in India and Southeast Asia. Since 1997 it had been included in CITES Appendix II.

15. The barn owl, or silver owl, (*Tyto sp.*) was a nocturnal bird found on all continents except Antarctica and was listed in CITES Appendix II in 2013.

16. In addition to the requirements of CITES and the ESA, federal law generally required that all animals or parts thereof, be declared to the USFWS prior to their import to or export from the United States. When importing or exporting any animals, individuals or their agents were required to file with the USFWS a completed Declaration for Importation or Exportation of Fish, Wildlife, or Plants (Form 3-177). A USFWS or Customs Service officer had to clear (or refuse) animals being imported or exported from the United States, and the importer, exporter, or his agent had to make available to the officer the animals being shipped, as well as all required permits, licenses or other documents. 50 C.F.R. § 14.

17. The Lacey Act criminalized the trafficking and false labeling of wildlife, fish, and plants. The Lacey Act made it unlawful for any person to knowingly "import, export, transport, sell, receive, acquire, or purchase any fish or wildlife or plant taken, possessed, transported, or sold in violation of any law, treaty, or regulation of the United States...." 16 U.S.C. §§ 3372(a)(1), 3373(d). The Lacey Act also made it unlawful to knowingly "make or submit any false record, account, or label for, or any false identification of, any fish, wildlife, or plant which has been, or is intended to be imported, exported, transported, sold, purchased, or received from

any foreign country; or transported in interstate or foreign commerce." 16 U.S.C. §§ 3372(d), 3373(d).

## B. The Conspiracy

18. From at least on or about October 4, 2011, through and including on or about January 12, 2017, in the Middle District of Florida and elsewhere,

NOVITA INDAH and LARRY MALUGIN,

the Defendants herein, did knowingly and willfully conspire together and with others, both known and unknown to the Grand Jury, to commit offenses against the laws of the United States, namely to:

    a. fraudulently and knowingly import and bring into the United States, any merchandise contrary to law, and receive, conceal, buy, sell, and in any manner facilitate the transportation, concealment, and sale of such merchandise after importation, knowing the same to have been imported and brought into the United States contrary to law, in violation of 18 U.S.C. § 545.

    b. fraudulently and knowingly export and send from the United States, and attempt to export and send from the United States, any merchandise, article, and object contrary to any law and regulation of the United States, and receive, conceal, buy, sell, and in any manner facilitate the transportation, concealment, and sale of such merchandise, article, and object, prior to exportation, knowing the same

        to be intended for exportation contrary to any law and regulation of the United States, in violation of 18 U.S.C. § 554.

    c.    knowingly make and submit any false record, account, and label for, and any false identification of any fish, wildlife, and plant which has been, and is intended to be imported, exported, transported, sold, purchased, and received from any foreign country, in violation of 16 U.S.C. §§ 3372(d)(1), 3373(d)(3)(A)(i).

19.    Defendants INDAH and MALUGIN created an eBay account under Defendant INDAH's name and the handle Vichinita, which was associated with the novi_novie@yahoo.com PayPal account. Between October 4, 2011, and March 31, 2012, they made approximately 146 online sales of CITES-protected wildlife from this account and shipped the wildlife from Indonesia to the United States.

20.    Defendants INDAH and MALUGIN created an eBay account under Defendant MALUGIN's daughter's name with the handle kimbr1224. Between March and October 2012, they made approximately 428 online sales of CITES-protected wildlife from this account and shipped the wildlife from Indonesia to the United States.

21.    Defendants INDAH and MALUGIN created an eBay account with the handle great_collection@yahoo.com. They listed the account in Defendant INDAH's name and provided their mutual address in Port Richey, Florida. Between January 1, 2013, and January 12, 2017, they made approximately 424 online sales of

CITES-protected wildlife from this account and shipped the wildlife in interstate and foreign commerce from the Middle District of Florida.

22. From 2011 to 2017, Defendants INDAH and MALUGIN made approximately 4,596 online sales of CITES-protected wildlife worth approximately $211,212.

### C. Manner and Means

23. It was a part of the conspiracy that Defendants INDAH and MALUGIN would and did illegally import the skin, bone, and taxidermy mounts of wildlife from Indonesia into the United States in violation of the CITES treaty, ESA, and U.S. import regulations.

24. It was further a part of the conspiracy that Defendants INDAH and MALUGIN would and did sell said wildlife through separate accounts on eBay and by others means in interstate and foreign commerce, and collect payment by PayPal.

25. It was further a part of the conspiracy that Defendants INDAH and MALUGIN would and did falsely label the packages shipped in international commerce to avoid detection by U.S. and foreign customs authorities.

26. It was further a part of the conspiracy that Defendants INDAH and MALUGIN would and did illegally export wildlife from the United States in violation of the CITES treaty, ESA, and U.S. export regulations.

### D. Notice that Wildlife Sales Were Illegal

Defendants INDAH and MALUGIN shipped wildlife from Indonesia, Puerto Rico, and the Middle District of Florida to customers in the United States and in

other countries. Defendants INDAH and MALUGIN were aware that their conduct was illegal in that:

27. On or about October 4, 2011, USFWS seized a package associated with the Vichinita eBay account containing CITES-protected wildlife that Defendants INDAH and MALUGIN sent from Indonesia to the United States. USFWS sent a forfeiture letter to the U.S. buyer.

28. On or about November 18, 25, and 29, 2011, and March 21, 2012, USFWS seized additional packages associated with the Vichinita eBay account containing CITES-protected wildlife that Defendants INDAH and MALUGIN sent from Indonesia to the United States. On each occasion, USFWS sent forfeiture letters to INDAH's address in Indonesia and to the U.S. buyer.

29. On or about March 9, 2012, USFWS seized a package associated with the kimbr1224 eBay account and containing CITES-protected wildlife that Defendants INDAH and MALUGIN sent from Indonesia to the United States. USFWS sent forfeiture letters to INDAH's address in Indonesia and to the U.S. buyer.

30. On or about April 4, 2012, USFWS seized a package containing CITES-protected wildlife that Defendant INDAH sent from Indonesia to Defendant MALUGIN in Puerto Rico. USFWS sent multiple forfeiture letters to INDAH's address in Indonesia and to MALUGIN's address in Puerto Rico.

31. On or about October 11, 2012, a customer sent an eBay message to Defendants INDAH and MALUGIN stating in substance, "I have read from your

9

feedback that you are having some of your items confiscated in customs. I want to be sure you wrap it well so that hopefully there will not be a problem in customs. I also wanted to make sure that if it is confiscated I will get a fu [sic]."

32. USFWS continued to seize packages in 2012 containing CITES-protected wildlife Defendant INDAH sent from Indonesia to the United States and issuing forfeiture letters to Defendant INDAH's address in Indonesia, to wit on or about: October 16 and 25, November 1, 7, and 9, and December 18.

33. At some point between approximately January 1, 2011, and April 24, 2013, Defendant INDAH took steps to obtain a CITES export permit from Indonesia but decided it was too costly.

34. On or about January 8, 2014, USFWS seized a package associated with the great_collection@yahoo.com eBay account containing CITES-protected wildlife shipped from Defendants INDAH and MALUGIN's residence in the Middle District of Florida and sent a forfeiture letter to their address.

35. On or about April 8, 2014, a customer sent an eBay message to Defendants INDAH and MALUGIN stating in substance, "I need to cancel my order because it is against Japanese regulations."

36. On or about April 17, 2014, eBay sent Defendants INDAH and MALUGIN an electronic message stating that eBay had removed their listing selling a macaque mount for violating eBay's wildlife policy and CITES.

37. On or about May 28, 2014, a customer sent an eBay message to Defendants INDAH and MALUGIN stating in substance, "Customs took belt in

San Francisco. Sent empty box with letter from fish and game. Said this was illegal to bring into country. I would like a full refund and would not want to participate in anything illegal."

38. On or about June 16, 2014, eBay sent Defendants INDAH and MALUGIN an electronic message stating that eBay had removed their listing selling cobra and python mounts for violating eBay's wildlife policy and CITES.

39. On or about August 6, 2014, eBay sent Defendants INDAH and MALUGIN an electronic message stating that eBay had removed their listing selling a lutung skull for violating eBay's wildlife policy and CITES.

40. On or about September 16, 2014, eBay sent Defendants INDAH and MALUGIN an electronic message stating that they had removed their listing selling a langur skull for violating eBay's wildlife policy and CITES.

41. On or about November 23, 2014, eBay sent Defendants INDAH and MALUGIN an electronic message stating that a spitting cobra shipment "couldn't be delivered because the shipment contained items that were found to be restricted for import to Canada."

42. On or about November 27, 2014, a USFWS wildlife inspector spoke with Defendant INDAH on the telephone and stated that they had seized a package containing CITES-protected wildlife and that the shipment was illegal.

### E. Overt Acts

43. In furtherance of the conspiracy, and to effect the objects thereof, Defendants NOVITA INDAH and LARRY MALUGIN, and others, committed

and caused to be committed, within the Middle District of Florida and elsewhere, at least one of the following overt acts, among others:

Overt Act 1: On or about October 4, 2011, Defendants INDAH and MALUGIN made an online sale of a reticulated python from the novi_novie@yahoo.com account and shipped it from Indonesia to the United States.

Overt Act 2: In March 2012, Defendants INDAH and MALUGIN sold wildlife online using the kimbr1224 account and shipped the wildlife from Indonesia to the United States. The wildlife included five cobra skin belts, two python skin belts, and one stuffed spitting cobra mount.

Overt Act 3: In March 2012, Defendants INDAH and MALUGIN sold a spitting cobra mount online from the kimbr1224 account and shipped it from Indonesia to the United States.

Overt Act 4: In March or April 2012, Defendants INDAH and MALUGIN sold wildlife online from the kimbr1224 account and shipped it from Indonesia to Puerto Rico. The wildlife included two cobra skin belts, one cobra skin wallet, one spitting cobra mount, 50 cobra skins, and one macaque mount.

Overt Act 5: On or about August 13, 2013, Defendants INDAH and MALUGIN created a PayPal and eBay account associated with great_collection@yahoo.com and their home address in Port Richey, Florida.

Overt Act 6: On or about October 6, 2014, Defendants INDAH and MALUGIN arranged for wildlife to be imported from Indonesia to their residence in Florida falsely labeled as "Toy's 5 Pcs."

Overt Act 7: In November 2014, Defendants INDAH and MALUGIN imported a shipment of wildlife from Indonesia to their residence in Port Richey, Florida. The shipment contained a spitting cobra mount and a reticulated python mount.

Overt Act 8: In 2015, Defendants INDAH and MALUGIN made two online sales of wildlife, each sale constituting an overt act, from the great_collection@yahoo.com account in foreign commerce worth approximately $133. The wildlife sold included a spitting cobra and monitor lizard. Defendants INDAH and MALUGIN labeled the packages as containing toys, stuffed animals, or gifts.

Overt Act 9: On or about March 7, 2015, Defendants INDAH and MALUGIN listed two spitting cobra skins on eBay and sold them to a USFWS undercover agent for $28.90.

Overt Act 10: On or about March 7, 2015, Defendants INDAH and MALUGIN shipped the cobra skins listed in Overt Act 9 in interstate commerce from Port Richey, Florida, to Oregon.

Overt Act 11: On or about March 15, 2015, Defendants INDAH and MALUGIN listed two monitor lizard skins on eBay and sold them to a USFWS undercover agent for $30.90.

Overt Act 12: On or about March 15, 2015, Defendants INDAH and MALUGIN shipped the monitor lizard skins listed in Overt Act 11 in interstate commerce from Port Richey, Florida, to Oregon.

Overt Act 13: On or about April 10, 2016, Defendants INDAH and MALUGIN listed a spitting cobra mount on eBay and sold it to a USFWS undercover agent for $76.

Overt Act 14: On or about April 10, 2016, Defendants INDAH and MALUGIN shipped the cobra mount listed in Overt Act 13 in interstate commerce from Port Richey, Florida, to Washington State.

Overt Act 15: On January 12, 2017, Defendants INDAH and MALUGIN possessed wildlife at their Port Richey, Florida, home with the intent sell it. The wildlife consisted of spitting cobra and krait snake mounts, cobra and water snake skins, wallets, belts, monitor lizard skins, python skins, and a babirusa skull valued collectively at approximately $10,253.

All in violation of 18 U.S.C. § 371.

## COUNT TWO
### (Smuggling goods into the United States)

44.   The allegations set out in paragraphs 1 through 17 and 19 through 22 are hereby realleged and incorporated herein by reference.

45.   From at least on or about June 2014, through and including on or about January 12, 2017, in the Middle District of Florida, the Defendants,

NOVITA INDAH and LARRY MALUGIN,

fraudulently and knowingly imported and brought into the United States, merchandise, to wit, wildlife, contrary to law, and received, concealed, bought, sold, and facilitated the transportation, concealment, and sale of such merchandise after

importation, knowing the same to have been imported and brought into the United States contrary to law.

In violation of 18 U.S.C. §§ 545 and 2.

## COUNT THREE
### (Smuggling goods from the United States)

46. The allegations set out in paragraphs 1 through 17 and 19 through 22 are hereby realleged and incorporated herein by reference.

47. From at least on or about June 2014, through and including on or about May 4, 2016, in the Middle District of Florida, the Defendants,

NOVITA INDAH and LARRY MALUGIN,

fraudulently and knowingly exported and sent from the United States, and attempted to export and send from the United States, merchandises, articles, and objects, to wit, wildlife, contrary to law and regulation of the United States, and received, concealed, bought, sold, and facilitated the transportation, concealment, and sale of such merchandise, article, and object, prior to exportation, knowing the same to be intended for exportation contrary to law and regulation of the United States. In violation of 18 U.S.C. §§ 554 and 2.

## COUNT FOUR
### (Lacey Act Trafficking)

48. The allegations set out in paragraphs 1 through 17 and 19 through 22 are hereby realleged and incorporated herein by reference.

49. On or about January 12, 2017, in the Middle District of Florida, the Defendants,

NOVITA INDAH and LARRY MALUGIN,

did knowingly engage in conduct that involved the sale and purchase of, the offer of sale and purchase of, and the intent to sell and purchase wildlife, to wit:

four spitting cobra mounts, one python mount, one krait snake mount, 156 assorted snakeskins, 99 monitor lizard skins, 77 assorted snakeskin wallets, ten assorted lizard skin wallets, 20 belts with snake heads, and one babirusa skull,

with a market value in excess of $350, and did knowingly transport, sell, receive, acquire, and possess said wildlife knowing that it was taken, possessed, transported, and sold in violation of, and in a manner unlawful under, any law, regulation, and treaty of the United States.

In violation of 16 U.S.C. §§ 3372(a)(1) and 3373(d)(1)(B), and 18 U.S.C. § 2.

## COUNT FIVE
### (Lacey Act False Labeling)

50. The allegations set out in paragraphs 1 through 17 and 19 through 22 are hereby realleged and incorporated herein by reference.

51. From at least on or about June 2014, through and including on or about May 4, 2016, in the Middle District of Florida, the Defendants,

NOVITA INDAH and LARRY MALUGIN,

did knowingly make and submit a false record, account, and label for, and a false identification of wildlife which had been, and was intended to be imported, exported,

16

transported, sold, purchased, and received from a foreign country, and the offense involved the import and export of wildlife.

In violation of 16 U.S.C. §§ 3372(d)(1) and 3373(d)(3)(A)(i) and 18 U.S.C. § 2.

## FORFEITURE

1. The allegations contained in Counts One through Five are incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(2)(B), 16 U.S.C. § 3374, and 28 U.S.C. § 2461(c).

2. Upon conviction of a violation of 18 U.S.C. § 545, or a conspiracy to violate 18 U.S.C. § 545, the defendants,

NOVITA INDAH and LARRY MALUGIN,

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2)(B): (a) any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of the offense; and (b) pursuant to 18 U.S.C. § 545 and 28 U.S.C. § 2461(c), any merchandise introduced into the United States in violation of § 545, or the value thereof.

3. Upon conviction of a violation of 18 U.S.C. § 554, or a conspiracy to violate 18 U.S.C. § 554, the defendants,

NOVITA INDAH and LARRY MALUGIN,

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violation.

4.      Upon conviction of a violation of 16 U.S.C. § 3372, or a conspiracy to violate 16 U.S.C. § 3372, the defendants,

NOVITA INDAH and LARRY MALUGIN,

shall forfeit to the United States, pursuant to 16 U.S.C. § 3374 and 28 U.S.C. § 2461(c), (1) all fish or wildlife or plants imported, exported, transported, sold, received, acquired, or purchased, as a result of the offense, and (2) all vessels, aircrafts, vehicles, and other equipment used in the aid of importing, exporting, transporting, selling, receiving, acquiring, or purchasing fish or wildlife or plants as a result of the offense.

5.      The property to be forfeited includes, but is not limited to, all wildlife imported from Indonesia to the United States, which was found and seized from the premises at 7739 Jasmine Boulevard in Port Richey, Florida, to wit:

    a. Four spitting cobra mounts;

    b. one python mount;

    c. one krait snake mount;

    d. 156 assorted snakeskins;

    e. 99 monitor lizard skins;

    f. 77 assorted snakeskin wallets;

    g. ten assorted lizard skin wallets;

    h. 20 belts with snake heads; and

    i. one babirusa skull.

6. If any of the property described above, as a result of any act or omission of the defendants:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

the United States shall be entitled to forfeiture of substitute property under the provisions of 21 U.S.C. § 853(p), as incorporated by 982(b)(1) and 28 U.S.C. § 2461(c).

A TRUE BILL,

_____
Foreperson

MARIA CHAPA LOPEZ
United States Attorney
Middle District of Florida

JEAN E. WILLIAMS
Deputy Assistant Attorney General
Environmental & Natural
Resources Division

By: _____
for Jay G. Trezevant
Assistant United States Attorney
Chief, Economic Crimes Section

By: _____
Ryan Connors
Trial Attorney

By: _____
Kelley C. Howard-Allen
Assistant United States Attorney

By: _____
Matthew Evans
Trial Attorney

FORM OBD-34
June 19

No.

# UNITED STATES DISTRICT COURT
Middle District of Florida
Tampa Division

THE UNITED STATES OF AMERICA

vs.

NOVITA INDAH and
LARRY MALUGIN

## INDICTMENT

Violations: 18 U.S.C. §§ 371, 545, 554,
16 U.S.C. §§ 3372(a)(1), 3372(d)(1), 3373(d)(3)(a)(i), 3373(d)(1)(B)

A true bill,

_____
Foreperson

Filed in open court this 20th day

of June 2019.

_____
Clerk

Bail $_____

GPO 863 525